United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESUS J. MONTES,

        Petitioner,

    v.

ROSEMARY NDOH,

        Respondent.

No.  C 19-6310 WHA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

Petitioner Jesus Montes is a state prisoner serving a sentence of fifteen-years-to-life in custody for multiple acts of child molestation.  He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  The Court ordered respondent to show cause why the instant petition should not be granted.  Respondent filed an answer denying petitioner's claims.  Although given notice and an opportunity to do so, petitioner did not file a traverse.

For the reasons stated below, the petition is **DENIED**.

## STATEMENT

1. **FACTUAL BACKGROUND.**

The following description of the evidence presented at trial has been taken from the opinion of the California Court of Appeal on direct review.[1]

---

[1] The California Court of Appeal's summary of the facts of Petitioner's offense is presumed correct.  *See Hernandez v. Small*, 282 F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. 2254(e)(1).

United States District Court
Northern District of California

*Prosecution Evidence*

In April 2015, Doe lived in San Pablo with her mother (Maria), Maria's four other children, Maria's brother, Anna G., Doe's grandmother (Elsa), and Montes. Montes was in a romantic relationship with Elsa and slept in her room. At the time of trial, Doe was seven years old and repeating first grade.

*Doe's Testimony*

Doe initially testified she did not recognize Montes and had never seen him before. When asked if she knew who "Philly" was, Doe said "my grandma's dad" and that he lived with grandma. [FN 3.] Doe testified that she lived with "grandma's dad." But when shown a picture of her house, Doe said "grandma's dad" did not live there. "He lives far away, but I don't know where he lives." She then said "[h]e used to stay in my grandma's room with her. He sleeps."

> [FN 3: Maria testified Doe calls several different men "Philly," including Montes, the father of Maria's two youngest children, and Maria's boss, "because it becomes complicated for [Doe] to pronounce their names." On cross-examination, Doe was asked if she knew her mother's and grandmother's boss, who was named Phillip or Philly. Doe said, "He's already in jail (indicating)." She also said that the person who touched her was "asleeper" at the time.]

Doe testified that "grandma's dad," named Montes, touched her. Doe had been alone with Montes in Elsa's room when Doe was looking for something. She remembered talking to a police officer about Montes "[p]utting [her] fronts and [her] back" in Elsa's room. When the prosecutor tried to determine how Doe had been touched, the following exchange occurred:

> "Q. How were your clothes when that person was touching you?
> "A. He went to the police.
> "Q. Okay. Who went to the police?
> "A. Miton. [FN 4.]
> "Q. Okay.
> "A. He went to the police because we call. Right now, we call the police take him to jail.
> "Q. How were your clothes when that person was touching you?
> "A. With his hands.
> "Q. Okay. Is that what he touched you with?
> "A. (Nods head.) [¶] With their hands (indicating).
> "Q. Were you wearing clothes?
> "A. Yes."

> [FN 4: Doe had previously testified that "Miton" was Montes.]

When asked if she was touched over or under her clothes, Doe said, "Over the clothes, and my back one." After Doe left Elsa's room, she went to bed and did not tell anyone in her family. She did tell a police officer, who took Montes to jail. She again said she did not see Montes in the courtroom, explaining he was "already in jail."

On redirect, Doe testified Montes was asleep when he touched her, that his eyes were closed, and that he did not say anything. When asked how he touched her if he was asleep, Doe said: "He was not sleeping. He was waking and he was sleeping now because I leaved." She then said Montes was awake when he touched her. When asked again if his eyes were open when he touched her, Doe said, "No, he was sleeping a lot. He take him already in jail (unintelligible). He already escape." When asked where she was when Montes touched her, Doe said, "I was running and then I was like going to somewhere to pick something." Doe said Montes was not laying down when he touched her, but then said Montes was sleeping. Doe was standing next to Montes when the touching occurred. The prosecutor asked, "How did his hand move when he touched you?" Doe replied: "Not moving. He was only sleeping forever. Really, a lot." Doe's answer prompted the following exchange:

> "Q. Did his hand move to touch your part or no?
> "A. No.
> "Q. So did you sit on his hand?
> "A. Huh-uh.
> "Q. Can you explain to me how his hand touched your front part?
> "A. Well, he was sleeping forever and I come back. I am sleeping, but—I want to go to bed too. But I don't want Miton to come in my house or he's going to touch me in the fronts or the butt.
> "THE COURT: Can you say that again? What? I couldn't quite understand. You said you wanted to go sleeping too, but what? Do you remember what you just said?
> "THE WITNESS: Yeah, I don't want to sleep with this guy because this is getting more dangerous. You're touching my fronts and my back, so I want him to go in jail. Not me because I didn't do anything today."

*Doe's Mother's Testimony*

Maria testified that, on April 11, 2015, Montes returned home around 8:30 p.m. Maria observed Montes having difficulty keeping his balance and supporting himself against the wall. Fifteen minutes after his return, Maria was in the kitchen and heard Doe in Montes's bedroom. It sounded like Doe was laughing or playing. Maria called out to Doe to leave the bedroom.

Doe walked into the kitchen and said Montes, who she called "Phillip" or "Philly," had touched her "booty." [FN 5.] Doe also indicated, with her hand, that Montes had touched her vagina. Although Maria speaks only Spanish and Doe speaks only English, Maria understood what Doe said. With the help of Anna G., Maria

3

called the police.

> [FN 5:  On the night in question, Montes was the only man she called "Philly" at the house.]

*Police Investigation*

San Pablo Police Department Officer Lluvia Lopez responded at 10:00 p.m.  Lopez found Montes sleeping, face down, in the bedroom.  Montes was difficult to wake, but Lopez could not recall if he appeared intoxicated.  Lopez interviewed Doe in a private room with the door closed.  The audio recording of the interview was played for the jury.  Doe said Philly touched her "butt" and "weinies."  Doe said he touched her "[i]nside on my butt" and "in here and there."  Doe repeatedly pointed to her vagina to demonstrate the other place she had been touched.

Doe was examined that same night by a sexual assault response team (SART).  Doe told the SART nurse that, in her grandmother' room, Philly put his hands inside both the front and back of her pants, Philly touched her "booty" and "butthole," and that Philly penetrated both her "butthole" and "front waterfall."  Doe said the touching hurt.  Doe similarly told the examining SART doctor, "I got hurt by Philly.  His hand was inside my pants in the front and in the back.  He put his finger in the hole.  Philly's clothes stayed on.  My clothes stayed on.  I didn't touch him."  Doe demonstrated how Philly touched both her "waterfall" and "butthole" by making a fist with her left hand and inserting her right index finger into the bottom of her left fist.  The results of the SART exam were normal.

On April 17, 2015, Doe was interviewed at the Children's Interview Center (CIC), a facility specifically designed for interviewing children suspected of being victims of abuse.  A video recording of the interview was played for the jury.  Doe was able to answer questions about her name, her most recent birthday, and school.  She also exhibited some concrete understanding of the difference between the truth and a lie, when the CIC interviewer asked her questions about different colored pencils.  [FN 6.]  However, when asked what it means to tell the truth, Doe responded, "Truth.  Truth."  The interviewer asked Doe, "What does truth mean?"  Doe responded, "Truth and dare."  [FN 7.]

> [FN 6: When shown a brown pencil, and told it was green, Doe correctly identified the statement as a lie. However, when shown a yellow pencil and told it was yellow, Doe said, "That's a lie." Doe explained, "You said orange." The interviewer finally showed Doe a green pencil and said it was green. Doe correctly identified this as the truth.]

> [FN 7: Montes attempts to use these answers to demonstrate Doe was incompetent to testify *at trial*. However, because the April 2015 interview was conducted almost five months before trial, and her competency during the CIC interview is not directly

4

at issue, we focus instead on her testimony at trial and the competency hearing. With respect to child witnesses, a finding of incompetency to testify at trial raises a presumption of incompetency at the time earlier out of court statements were made. (*In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1018 ["[i]f a child is incompetent at a given point in time by virtue of his or her youth, it can reasonably be presumed that the child was incompetent at an *earlier* point in time" (italics added) ].) We know of no authority for the contrary proposition.]

Doe told the CIC interviewer she had gone into her grandmother's room to retrieve some food, when Montes grabbed her. She said, "No" and told Montes to stop, but he touched her "butt" and her "fronts" with his hand, inside her pants. He put his finger "in [her] little hole" in her butt and "tipped the hole" in front. Doe said he did not say anything, when he touched her, because he was sleeping. She also said he touched her "100 times" and then said, he touched her "two times"—in her "butt" and her "front"—and that "it hurt[ ]."

*Defense Case*
Montes testified that on April 11, 2015, around midday, he visited two bars where he "had some beers." He returned to the home he shared with Elsa shortly after 8:00 p.m. Montes stated he was not "drunk" at that time, but admitted previously telling the police he had also used cocaine and was feeling the effects of both the cocaine and alcohol when he returned home. [FN 8.] Montes stated he went straight to bed and slept until the police woke him. He denied touching Doe.

[FN 8: At trial, Montes claimed he had been confused about the date and ingested cocaine on April 10, 2015.]

Ans., Exh. E at 3–6. *See also People v. Montes*, No. A147799, 2017 WL 4416078, at *1-2 (Cal. Ct. App. Oct. 5, 2017) (unpublished).

## 2.   PROCEDURAL BACKGROUND.

A jury in Contra Costa County convicted petitioner of battery, sexual acts with a child ten years old or younger, and two counts of lewd acts upon a child. The court sentenced petitioner to a term of fifteen years to life in state prison.

On direct appeal, petitioner argued that the trial court violated petitioner's right to confront the witnesses against him by limiting defense counsel's questioning of the victim's mother ("confrontation claim"), and that the victim was not competent to testify and the trial court violated petitioner's due process in allowing the victim to do so ("due process claim"). *See* Ans.,

United States District Court
Northern District of California

1   Exh. D at 24-47.  The California Court of Appeal held that petitioner's confrontation claim had

2   been forfeited, and that the trial court had not abused its discretion in finding the victim competent

3   to testify.  *See* Ans., Exh. E at 16-17, 12-13.  The California Court of Appeal affirmed the

4   judgment.

5           Petitioner raised the confrontation claim, but not the due process claim, to the California

6   Supreme Court on direct appeal.  *See* Ans., Exh. F at 5.  The California Supreme Court denied

7   review of petitioner's direct appeal.

8           Petitioner filed a state habeas petition in the California Court of Appeal.  In this first state

9   habeas petition, petitioner argued that he received ineffective assistance from trial counsel.  *See*

10  Ans., Exh. G at 26-30, 37-54 (first state habeas petition, setting forth claim).  The California Court

11  of Appeal issued an order to show cause, returnable in superior court.  The Contra Costa County

12  Superior Court decided it would be "pointless" to hold an evidentiary hearing on petitioner's

13  claim, and denied petitioner's first state habeas petition.  Ans., Exh. J at 37 (second state habeas

14  petition, describing the proceedings in Contra Costa County Superior Court on the first state

15  habeas petition).

16          Petitioner filed a second state habeas petition in the California Court of Appeal.  In the

17  second state habeas petition, petitioner argued that the Contra Costa County Superior Court had

18  "violated [the California Court of Appeal's] OSC by denying the [first state] habeas petition

19  without an evidentiary hearing."  *Id*. at 32-51.  Petitioner did not argue that the California Court of

20  Appeal should grant relief on his claim that he received ineffective assistance of counsel.  Instead,

21  petitioner argued that the California Court of Appeal "should '[l]et a writ of mandate issue

22  commanding respondent court to vacate its order [denying the first state habeas petition] and hold

23  an evidentiary hearing . . . .'"  *Id.* at 51.  The California Court of Appeal denied petitioner's

24  second state habeas petition.  *See* Ans., Exh. L.

25          Petitioner filed a petition for review in the California Supreme Court.  Petitioner argued

26  that he had been erroneously deprived of an evidentiary hearing in his first state habeas petition,

27  and that the California Court of Appeal compounded this error by denying his second state habeas

28  petition.  *See generally*, Ans., Exh. M.  Petitioner did not ask the California Supreme Court to

United States District Court
Northern District of California

6

relieve him of his conviction.  Instead, petitioner asked the California Supreme Court to order the lower courts to grant petitioner an evidentiary hearing.  *See id.* at 7 ("Montes requests this Court to grant review and to retransfer the matter to the Court of Appeal with directions to order an evidentiary hearing . . . ."), 8 (same), 34-35 (under a section entitled "remedy," asking the California Supreme Court "to grant review and retransfer the matter to the Court of Appeal with directions to issue a writ or other order *requiring the superior court to conduct an evidentiary hearing*.") (emphasis in original).  The California Supreme Court denied review.  *Ibid*.

This federal habeas petition followed.

## ANALYSIS

1. **STANDARD OF REVIEW.**

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. 2254(a).  The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

United States District Court
Northern District of California

1    Rather, that application must also be unreasonable." *Id.* at 411.  A federal habeas court making

2    the "unreasonable application" inquiry should ask whether the state court's application of clearly

3    established federal law was "objectively unreasonable." *Id.* at 409.

4          When there is no reasoned opinion from the highest state court to consider the petitioner's

5    claims, the federal habeas court looks to the last reasoned opinion from the state courts. *See*

6    *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  When the state court has rejected a claim on the

7    merits without explanation, the federal court "must determine what arguments or theories

8    supported or . . . could have supported, the state court's decision; and then it must ask whether it is

9    possible fairminded jurists could disagree that those arguments or theories are inconsistent with

10   the holding in a prior decision of [the U.S. Supreme] Court." *Harrington v. Richter*, 562 U.S. 86,

11   102 (2011).

12   **2.     CLAIMS FOR RELIEF.**

13         As grounds for federal habeas relief, petitioner claimed: (1) the trial court violated

14   petitioner's right to confront Doe's mother when she testified as a witness ("confrontation claim");

15   (2) the trial court violated petitioner's right to due process by allowing Doe to testify, though Doe

16   lacked the necessary competence ("due process claim"); and (3) the state court erred by declining

17   petitioner's request for an evidentiary hearing on his claim of ineffective assistance of trial counsel

18   ("evidentiary hearing claim").[2]

19         **A.     CONFRONTATION CLAIM.**

20         Petitioner claimed that the trial court violated petitioner's right to confront a witness.

21   Specifically, petitioner argued that the trial court erred by sustaining an objection to defense

22   counsel's question whether the victim's mother knew why the victim was repeating first grade.

23   *See* Pet. at 5.  Petitioner contended that an answer to this question may have allowed him to show

24   _____

25   [2] In its order serving the petition, the Court erroneously described petitioner's third claim as one for ineffective
     assistance of counsel  However, the petition challenged the Contra Costa County Superior Court's denial of an
26   evidentiary hearing during petitioner's first state habeas petition, which hearing would have concerned a claim that
     petitioner received ineffective assistance of counsel. *See* Pet. at 5 ("Montes sought review of the superior court's
27   denial of an evidentiary hearing . . . ."); *see also* Ans. at 22 (arguing that petitioner did not state a claim for ineffective
     assistance of counsel in his federal habeas petition).  Accordingly, the Court will analyze the claim petitioner actually
28   raised in the instant federal habeas petition, regarding the denial of a hearing.  The Court will not analyze an
     ineffective assistance of counsel claim, because no such claim was raised in the instant petition.  *See generally,* Pet.

United States District Court
Northern District of California

that the victim was developmentally disabled, and thus that the jury could not rely on her testimony.  Petitioner argued that, by sustaining this objection, the trial court improperly limited cross-examination of a witness in violation of the Confrontation Clause.  Respondent argued that petitioner's confrontation claim is procedurally defaulted and petitioner did not show cause and prejudice for the default, and that in any event the claim is meritless.  *See* Ans. at 11-15.

Respondent is correct.  Petitioner's confrontation claim is procedurally defaulted, and in any event is meritless.

### *(1)*   *THE CONFRONTATION CLAIM IS PROCEDURALLY DEFAULTED.*

Petitioner raised his confrontation claim on direct appeal to the California Court of Appeal and to the California Supreme Court.  The California Court of Appeal held that petitioner's confrontation claim had been forfeited, *see* Ans., Exh. E at 16-17, 12-13, and the California Supreme Court denied review without explanation, *see* Ans., Exh. F at 5.

A federal court will not review questions of federal law decided by a state court if the state court's decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. "The [independent and adequate state grounds] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

Here, the California Court of Appeal determined that petitioner's confrontation claim was procedurally barred by California Evidence Code Section 354.  *See* Ans., Exh. E at 16-20.  In relevant part, Section 354 provides that:

> A verdict or finding shall not be set aside . . .  by reason of the erroneous exclusion of evidence *unless* the court . . .  is of the opinion that the error or errors complained of resulted in a miscarriage of justice *and* it appears of record that:
>     (a) The substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means;
>     (b) The rulings of the court made compliance with subdivision (a) futile; or
>     (c) The evidence was sought by questions asked during cross-examination or recross-examination.

9

United States District Court
Northern District of California

1    The California Court of Appeal found that none of Section 354's exceptions applied in

2    petitioner's case.  Specifically, the court found that the first exception did not apply because

3    defense counsel had not offered proof to demonstrate the relevance of the excluded evidence

4    during the cross-examination of the victim's mother, *see* Ans., Exh. E at 16; that the second

5    exception did not apply because the trial court had not so restricted cross-examination that other

6    lines of questioning would have been futile, *id*. at 17; and that the third exception did not apply

7    because the questions fell outside the scope of direct examination and counsel did not ask the

8    victim's mother if the victim had developmental disabilities, *ibid*.

9    Although the United States Supreme Court and the Ninth Circuit have not weighed in on

10   this issue, several sister courts have held that Section 354 is an adequate state procedural rule.  *See*

11   *Arana v. Grounds*, No. 11-CV-01972-JST (PR), 2014 WL 106781, at *8 (N.D. Cal. Jan. 10, 2014)

12   (Judge Jon Tigar) (holding that Section 354 constitutes independent and adequate state procedural

13   rule under *Wainwright v. Sykes,* 433 U.S. 72, 87–88 (1977)); *Penisoni v. Walker*, No. C-10-1040

14   EMC PR, 2012 WL 5389691, at *9 (N.D. Cal. Nov. 2, 2012) (Judge Edward Chen) (same);

15   *Williams v. Sisto,* No. 07–5342 CW, 2010 WL 530086, at *8–9 (N.D. Cal. Feb. 8, 2010) (Judge

16   Claudia Wilken) (same); *Rogan v. Henry,* No. 97–4460 BZ, 1999 WL 375603, at *3–4 (N.D. Cal.

17   June 4, 1999) (Magistrate Judge Bernard Zimmerman) (same).  This Court agrees.  Moreover, the

18   California Court of Appeal's discussion of Section 354 was independent because it was "not [ ]

19   interwoven with federal law." *La Crosse v. Kernan*, 244 F.3d 702, 704 (9th Cir. 2001).  Because

20   the California Court of Appeal's decision rests on a state law ground that is independent of the

21   federal question and adequate to support the judgment, petitioner's confrontation claim is

22   procedurally barred.

23   In some instances, petitioner may avoid the procedural default doctrine by showing cause

24   for the default and prejudice.  *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).  The cause

25   standard requires the petitioner to show that "some objective factor external to the defense" or

26   constitutionally ineffective assistance of counsel impeded his efforts to comply with the state's

27   procedural rule.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To satisfy the prejudice part of

28   the cause-and-prejudice test, the petitioner must show actual prejudice resulting from the errors of

1    which he complains.  *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  A petitioner also may

2    avoid the procedural default doctrine if he can show actual innocence.  *See Schlup v. Delo*, 513

3    U.S. 298, 327 (1995).

4         Here, petitioner made no effort to show that his procedural default was caused by

5    constitutionally ineffective assistance of counsel or any other circumstance external to the defense,

6    or to show that he is actually innocent of the crimes of which he was convicted.  Indeed, as noted

7    *supra*, petitioner did not file any response to the Answer.  Petitioner, therefore, did not establish

8    cause for the default or prejudice of a magnitude resulting in a fundamental "miscarriage of

9    justice." *Schlup,* 513 U.S. at 316.

10        For these reasons, petitioner's confrontation claim was procedurally defaulted.

11            *(2)    THE CONFRONTATION CLAIM IS MERITLESS.*

12        Even if petitioner's confrontation claim were not procedurally barred, it would fail on the

13   merits.

14        The Confrontation Clause of the Sixth Amendment provides that in criminal cases the

15   accused has the right to "be confronted with witnesses against him."  U.S. Const. amend. VI.

16   However, the Confrontation Clause does not prevent a trial judge from imposing reasonable limits

17   on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness

18   safety or interrogation that is repetitive or only marginally relevant.  *Delaware v. Van Arsdall,* 475

19   U.S. 673, 679 (1986).  The Confrontation Clause guarantees an opportunity for effective cross-

20   examination, not cross-examination that is effective in whatever way, and to whatever extent, the

21   defense might wish.  *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (per curiam).  In addition,

22   "[the United States Supreme] Court has never held that the Confrontation Clause entitles a

23   criminal defendant to introduce *extrinsic evidence* for impeachment purposes."  *Nevada v.*

24   *Jackson*, 569 U.S. 505, 511 (2013) (emphasis in original) (criticizing Ninth Circuit for "elid[ing]

25   the distinction between cross-examination and extrinsic evidence by characterizing the cases as

26   recognizing a broad right to present 'evidence bearing on [a witness'] credibility").

27        A defendant meets his burden of showing a Confrontation Clause violation by showing

28   that "[a] reasonable jury might have received a significantly different impression of [a witness']

United States District Court
Northern District of California

11

1    credibility . . . had counsel been permitted to pursue his proposed line of cross-examination." *Van*

2    *Arsdall,* 475 U.S. at 680.  The focus of this inquiry "must be on the particular witness, not on the

3    outcome of the entire trial." *Ibid*.  To determine whether a defendant's Sixth Amendment right of

4    confrontation has been violated by the exclusion of evidence on cross-examination, a court must

5    inquire whether (1) the evidence was relevant; (2) there were other legitimate interests

6    outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence

7    left the jury with sufficient information to assess the credibility of the witness.  *See United States*

8    *v. Beardslee*, 197 F.3d 378, 383-84 (9th Cir.), *amended*, 204 F.3d 983 (9th Cir. 2000).

9         Applying the *Beardslee* factors, petitioner's claim does not warrant habeas relief.  With

10   respect to the *first* factor, the evidence sought was not relevant.  As the California Court of Appeal

11   noted, defense counsel did not actually ask the victim's mother whether the victim had a

12   developmental disability.  Instead, defense counsel asked whether the victim's mother knew why

13   the victim had repeated the first grade, and the trial court sustained an objection to that question.

14   A yes or no answer from the victim's mother would have revealed nothing about the victim's

15   developmental disability, much less the victim's credibility.  Indeed, defense counsel stated to the

16   trial court that he "[did not] know where [he was] going with this," that "[i]t just struck [him]" that

17   the victim may have "some learning disorder, educational disorder, something to that effect," and

18   that if this were the case "it would be evidence that could be presented to the jury to show about

19   her credibility and her ability to remember and relate facts."  Ans., Exh. B at 163.  As defense

20   counsel could not articulate the relevance of his question regarding the victim's repetition of first

21   grade, the trial court did not violate petitioner's confrontation rights in concluding that the

22   question was not relevant.

23        The *second* factor also weighs against petitioner.  Defense counsel argued to the California

24   Court of Appeal that the challenged question was intended to begin a line of questioning which

25   would end with a statement that the victim was not credible.  Ans., Exh. D at 38.  However,

26   petitioner's interest in pursuing this line of questioning was outweighed by the legitimate concern

27   that it would confuse the issues and introduce testimony that was "only marginally relevant."  *Van*

28   *Arsdall*, 475 U.S. at 679.  To achieve the desired ends, defense counsel would have to establish (1)

United States District Court
Northern District of California

12

1    that the victim's mother knew why the victim had to repeat first grade; (2) through non-hearsay

2    testimony, that the reason for this repetition was a developmental disability rather than some other

3    reason such as a language barrier; (3) presumably through expert testimony, the nature of the

4    victim's developmental disability; (4) if true, and presumably through expert testimony, that the

5    victim's disability reduced her ability to recall and relate facts; and (5) if true, and presumably

6    through expert testimony, that this reduction in her abilities rendered the victim less credible.  For

7    defense counsel's question to become relevant it would have to be followed by a mini-trial on the

8    victim's developmental disability.  The trial court also noted that defense counsel had been aware

9    since at least the pre-trial competency hearing that the victim suffered "developmental delays,"

10   and could have pursued this issue "based on discovery."  Ans., Exh. B at 162.  The trial court

11   legitimately refused to halt the criminal trial in order to conduct a belated mini-trial on the victim's

12   disability.

13           The *third* factor also weighs against petitioner, because the jury was given a sufficient

14   opportunity to assess the victim's credibility.  The victim testified before the jury, and the trial

15   court did not bar petitioner from challenging the victim's testimony as fabricated or otherwise

16   inaccurate.  The trial court also noted it was apparent during that testimony that the victim suffered

17   a developmental disability, so to the extent defense counsel believed the disability reduced the

18   victim's credibility, the jury was able to observe that disability and to draw the appropriate

19   conclusions.  *Id*. at 134.  Thus, even assuming that the victim's disability ought to weigh on her

20   credibility, the jury was already aware of that disability without defense counsel's question to the

21   victim's mother.  As the jury had sufficient information to assess the victim's credibility, the third

22   factor weighs against finding error.  *See Plascencia v. Alameda*, 467 F.3d 1190, 1201 (9th Cir.

23   2006) (exclusion of cross-examination that would have provided cumulative or repetitive evidence

24   did not violate Confrontation Clause or was harmless error); *United States v. Brown*, 347 F.3d

25   1095,1098-99 (9th Cir. 2003) (no Confrontation Clause violation in district court's quashing

26   defense subpoena where thorough cross-examination of informant enabled jury to sufficiently

27   assess informant's credibility)  Accordingly, the state court's denial of petitioner's confrontation

28   claim was neither contrary to nor an unreasonable application of federal law under AEDPA.

United States District Court
Northern District of California

13

1  Because petitioner's confrontation claim was procedurally defaulted and is without merit,

2  petitioner is not entitled to relief on this claim.

3      **B.**    **DUE PROCESS CLAIM.**

4      In his due process claim, petitioner contended that the trial court abused its discretion in

5  finding that the victim competent, argued that the victim was not competent to testify, and urged

6  that the admission of the victim's testimony despite her incompetence violated petitioner's due

7  process.  Pet. at 5.  Respondent argued that petitioner's due process claim was not exhausted, is an

8  issue of state law not cognizable in a federal habeas petition, and is meritless.  *See* Ans. at 20-22.

9      Respondent is correct.

10              *(1)*    *THE DUE PROCESS CLAIM WAS NOT EXHAUSTED.*

11      To exhaust his federal habeas claims, a petitioner must present the federal constitutional

12  basis for his claims to the state's highest court.  *Gray v. Netherland,* 518 U.S. 152, 162–63 (1996);

13  *Duncan v. Henry,* 513 U.S. 364, 365–66 (1995 (per curiam).  Here, petitioner argued to the

14  California Supreme Court on direct appeal that his confrontation right had been violated, but did

15  not raise his due process claim.  *See* Ans., Exh. F at 5.  Petitioner argued to the California

16  Supreme Court in his petition for collateral review that he had been erroneously deprived of an

17  evidentiary hearing in his first state habeas petition, and that the California Court of Appeal

18  compounded this error in his second state habeas petition.  *See* Ans., Exh. M.  Petitioner thus also

19  failed to raise his due process claim on collateral review.

20      Because the record shows that petitioner never presented his due process claim to the

21  California Supreme Court, this claim was not exhausted.

22              *(2)*    *THE DUE PROCESS CLAIM IS NOT COGNIZABLE.*

23      A district court may deny an unexhausted claim on the merits if it is perfectly clear that the

24  application does not raise even a colorable federal claim.  28 U.S.C. § 2254(b)(2); *see Cassett v.*

25  *Stewart,* 406 F.3d 614, 623-24 (9th Cir.2005).

26      In the instant federal habeas petition, petitioner phrased his due process claim in state law

27  terms.  He argued that the trial court "erred" and cited only a state opinion in support, *Rose v.*

28  *Superior Court*, 81 Cal. App. 4th 564 (2000).  *See* Pet. at 5; *see also* Ans., Exh. D at 24-36 (citing

14

United States District Court
Northern District of California

1   only state law in the argument to the California Court of Appeal that the trial court erred in

2   admitting incompetent testimony).  Petitioner thus failed to specify a federal ground for relief.  *See*

3   Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (petitioner shall "specify

4   all the grounds for relief available to the petitioner . . . .").

5         Although the United States Supreme Court and the Ninth Circuit have not addressed this

6   issue, several sister courts have found that a claim that a witness was incompetent to testify under

7   California law is not cognizable in a federal habeas petition.  *See Dean v. Lopez*, No. C 10-2465

8   PJH PR, 2013 WL 1190289, at *6 (N.D. Cal. Mar. 21, 2013) (Judge Phyllis Hamilton) ("[I]t is not

9   the province of a federal habeas court to reexamine state-court determinations on state-law

10   questions."); *Rodriguez v. McDonald*, No. C 11-1010 CRB PR, 2012 WL 1601000, at *13 (N.D.

11   Cal. May 7, 2012) (Judge Charles Breyer) (same); *McHenry v. Felker*, No. C 07-2334 JSW, 2010

12   WL 2629732, at *6 (N.D. Cal. June 29, 2010) (Judge Jeffrey White) ("The veracity or competence

13   of a witness is generally a matter of state law and not a federal question.") (citing *Schlette v.*

14   *California*, 284 F.2d 827, 834–35 (9th Cir. 1960)); *Gipson v. Hubbard*, No. C 06-5463 SI (PR),

15   2009 WL 426215, at *5 (N.D. Cal. Feb. 20, 2009) (Judge Susan Illston) (same).  This Court

16   agrees.  Because petitioner's due process claim is based exclusively on state law, it is not

17   cognizable in this federal habeas petition.

18                  *(3)*    ***THE DUE PROCESS CLAIM IS MERITLESS.***

19         Even if petitioner's due process claim were exhausted and cognizable, it would fail on the

20   merits.

21         The Ninth Circuit has rejected due process claims where the trial court admitted testimony

22   from a child that the petitioner later claimed was incompetent.  *See Walters v. McCormick*, 122

23   F.3d 1172 (9th Cir. 1997); *Farnum v. Frauenheim*, 768 F. App'x 680, 682 (9th Cir. 2019).  In

24   *Walters*, the Ninth Circuit held that due process may only be violated if state law requires the trial

25   court to conduct a competency hearing, and the trial court fails to conduct such a hearing.  *See* 122

26   F.3d at 1176.  Because the trial court had "conducted a meaningful hearing," "[t]here was no due

27   process violation."  *Id*. at 1176-77.  In *Farnum*, the Ninth Circuit similarly held that "there was no

28   due process violation" where the trial court had "conducted an adequate hearing."  768 F. App'x at

682 (going on to note that, in addition to the competency hearing, the jury had been "jury [had]
'remained free to assess the truthfulness and the significance of [the challenged] testimony, and
petitioner had the opportunity to refute it'") (citation omitted).  *See also Rodriguez*, 2012 WL
1601000, at *13 (rejecting due process claim as not cognizable and, in the alternative, meritless
because a competency hearing had been held) (applying *Walters*, 122 F.3d at 1176).

Here, as in *Walters* and *Farnum*, the trial court conducted a competency hearing before the
criminal trial.  The clerk's transcript reveals that defense counsel was able to cross-examine the
victim during the competency hearing and to argue that the victim was not competent to testify.
*See* Ans., Exh. B at 13:21-26:28.  The clerk's transcript also reveals that the trial court considered
counsel's arguments and reviewed California court decisions on witness competency before
finding the victim competent.  *See id*. at 26:29-29:21.  The trial court thus fulfilled the
requirements of due process.  *See Walters*, 122 F.3d at 1176; *Farnum*, 768 F. App'x at 682.  Thus,
this claim is without merit.

Because petitioner's due process claim not exhausted, not cognizable, and in any event is
without merit, petitioner is not entitled to relief on this claim.

C.    EVIDENTIARY HEARING CLAIM.

Petitioner claimed that the state court erred by not granting him an evidentiary hearing on
collateral review.  *See* Pet. at 5.  Respondent argued that this claim is not cognizable in a federal
habeas petition.  *See* Ans. at 23-24.  Respondent is correct.

It is well-settled that a claim "alleging errors in the state post-conviction review process is
not addressable through habeas corpus proceedings" because there is no federal constitutional
right to state habeas proceedings.  *Franzen v. Brinkman,* 877 F.2d 26, 26 (9th Cir. 1989).  *See also
Rowland v. Chappell*, 902 F. Supp. 2d 1296, 1338 (N.D. Cal. 2012) (claim that petitioner was
denied meaningful review in state collateral proceedings was not cognizable in federal petition)
(applying *Franzen,* 877 F.2d at 26) , *aff'd,* 876 F.3d 1174 (9th Cir. 2017); *Delgado v. Yates*, 622 F.
Supp. 2d 854, 865 (N.D. Cal. 2008) (Judge Charles Breyer) (claim that state court violated
petitioner's due process rights by denying state habeas petition without an opinion or evidentiary
hearing was not cognizable) (applying *Franzen,* 877 F.2d at 26).  This principle squarely applies

United States District Court
Northern District of California

16

to petitioner's challenge to the state courts' actions on collateral review.

Because petitioner's evidentiary hearing claim is not cognizable, petitioner is not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February ___2___, 2021.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court
Northern District of California

17